UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CIA, GARY GRESKO, S.A., | : |
| Plaintiff, | : Civil Action No. 08-4251 (JAP) |
| v. | : OPINION |
| STEWART TITLE GUARANTY COMPANY, INC., et al. | : |
| Defendants. | : |

PISANO, District Judge.

Plaintiff, CIA, Gary Gresko, S.A. ("Plaintiff or the "Company") brought this action against Stewart Title Guaranty Company, Stewart Information International, Inc. and Stewart Title Dominicana, S.A. (collectively, "Stewart" or "Defendants") seeking coverage under a title insurance policy. Presently before the Court is a motion by defendants to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted. Consequently, Defendants' motion to dismiss is granted.

**I. BACKGROUND** [1]

According to the complaint, Plaintiff CIA, Gary Gresko, S.A. is a Dominican Republic

---

[1] In addressing a motion to dismiss under Rule 12(b)(6), the Court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff. *Phillips v. County of Allegeheny*, 515 F.3d 224, 228 (3d Cir. 2008). Accordingly, the facts recited below are taken from Plaintiff's amended complaint unless otherwise indicated and do not represent this Court's factual findings.

company with its principal place of business in New Jersey.  Gary Gresko ("Gresko") is a principal of the company.  Compl. at 1, ¶ 1.  On or about November 28, 2006, Gresko "entered into a promise to purchase" certain land (the "Premises") in the Dominican Republic from Patrick Marchland ("Marchland").  Compl. at 3, ¶ 2.  As part of the due diligence process, Gresko engaged the services of Defendants "to review the title to the Premises and as part of the purchase secure title guaranty and/or insurance."  *Id.* ¶ 3.  On December 5, 2006, Stewart issued a commitment for title guaranty ("Commitment").  *Id.* ¶4; *see also* Commitment attached as Exhibit C to Certification of Joshua Elias ("Elias Cert.").[2]  The Commitment provided that Stuart Title Company would commit to issue its Guaranty of Title with respect to the Premises "upon payment of the premium charges therefore and compliance with and subject to the provisions of Schedules A, B and C and the Conditions and Stipulations hereof."  Commitment at 1.  Schedule C of the Commitment of the Commitment provided that

> Schedule B of the Title Guaranty to be issued will also contain exceptions with respect to the following matters that may affect title to the hereinabove-described property unless the following matters are disposed of to the satisfaction of the Company at or prior to the date of the issuance of the Title Guaranty. . .
>
> 8.  The Company requires a current Certificatión de No Litis Sobre Terrenos Registrados [Certification of No Litigation on Registered Lands], issued by the Secretary of the Superior Land Court north department.
>
> On December 13, 2006, Gresko paid Defendant $6,496 "to be applied toward the title

---

[2] Although a district court may not consider matters extraneous to the pleadings when considering a Rule 12(b)(6) motion, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997))

guaranty policy." *Id.* ¶ 5. Shortly thereafter, on December 22, 2006, Gresko formed the Company for the purpose of purchasing the Premises. Compl. at 3, ¶ 7.

On January 25, 2007, the Company executed a sales agreement with the Marchland for the acquisition of the Premises. *Id.* at 4, ¶ 8. The closing took place on February 16, 2007. The Defendants issued the title guaranty (the "Policy") to the Company "on or about" that same day. *Id.*, ¶¶ 9, 12.

There appears to be no disagreement that a current Certificatión de No Litis Sobre Terrenos Registrados was not obtained prior to the closing on the property. Consistent with express terms of the title commitment, because a current Certificatión de No Litis Sobre Terrenos Registrados had not been obtained prior to closing, Schedule B of the Policy expressly exempted loss or damage arising from the certain litigation that the parties had become aware of before the Policy issued (the "Litigation"). *See* Policy at Schedule B, ¶ 8, attached as Ex. B to Elias Cert. (excepting from coverage "any loss sustained or incurred due to the Litis Sobre Terrenos Registrados described in Case No. 2006-644-01472, filed in the Superior Land Court, northeast department.")

Ultimately, the Litigation resulted in a ruling dated April 27, 2007, which, among other things, voided the sale of the Premises the to Marchland, which, in turn, voided the sale by Marchland to the Company. Complaint ¶ 15. The ruling cancelled all certificates of title previous issued and ordered the issuance of the certificate of title in the name of a third party, Amal Salem. *Id.*

On October 1, 2007, the Company filed a quiet title action in the Dominican Republic. *Id.* at 19. Stewart was notified of the action and was requested to pursue the case, but refused do.

Plaintiff also demanded coverage under the Policy for a loss of over $2,000,000, which was also refused. This action followed.

**II. DISCUSSION**

A. Standard of Review under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. In *Bell Atlantic Corp v. Twombly*, 127 S. Ct. 1955, 1969 (2007), the Supreme Court set forth the standard for addressing a motion to dismiss under Rule 12(b)(6). The court in *Twombly* stated that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations… a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 1964-65 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the standard of review for a motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal quotations omitted)). Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all allegations in the complaint are true (even if doubtful in fact)[.]" *Twombly*, 127 S. Ct. at 1965.

B. Plaintiff's Complaint Fails to State a Claim

The complaint in this case alleges that Defendants breached their obligation under the Policy to provide coverage for the losses sustained by Plaintiff. Defendants argue that Plaintiff's claim should be dismissed because, pursuant to the plain language of the policy, Plaintiff is not

entitled to coverage. Plaintiff responds that there are fact issues that exist with respect to the existence of a duty on Defendants' part to search the public records that warrant denial of Defendants' motion. However, Plaintiff's complaint pleads only a single claim for breach of the Policy. Therefore, the question for the Court with respect to this motion is whether there was coverage under the Policy for the Plaintiff's loss.

It is well-settled that coverage under an insurance policy "is determined by the terms of the insurance contract, and interpreting the contract is a legal question for the court." *Rena, Inc. v. Brien,* 310 N.J. Super. 304, 321 (App. Div. 1998). In interpreting insurance contracts, the Court "first examines the plain language of the policy and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'" *Pizzullo v. New Jersey Mfrs. Ins. Co.*, 196 N.J. 251, 270 (2008) (quoting *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 595 (2001)). "[C]ourts should interpret the policy as written and avoid writing a better insurance policy than the one purchased." *Id.* (quoting *President v. Jenkins*, 180 N.J. 550, 562 (2004)). However, if the insurance contract is ambiguous, a court should interpret the contract so as to effect the reasonable expectations of the insured. *Id.* at 270-71.

In a dispute over insurance coverage, a plaintiff bears the initial burden of establishing that coverage exists under the policy. *See, e.g., Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 292 N.J. Super. 365, 377 (App. Div. 1996) (burden is on the insured "to bring the claim within the basic terms of the policy"). Here, Plaintiff has not met that burden. The unambiguous terms of the Policy provided that Stewart Title Guaranty Company would indemnify Plaintiff against loss or damage subject to "THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B." Policy at 1 (emphasis in original). Schedule B, captioned "Exceptions from

Coverage," excepts from coverage "any loss sustained or incurred due to the Litis Sobre Terrenos Registrados described in Case No. 2006-644-01472, filed in the Superior Land Court, northeast department." *Id.*, Schedule B, ¶ 8.  The parties do not dispute that this is the case that resulted ultimately in the voiding of the transaction from Marchland to the Company.  As the losses for which Plaintiff sought coverage were incurred as a result of this Litigation, the losses are excluded from coverage under the clear terms of the Policy.  Accordingly, Defendants' motion to dismiss is granted.

### III. CONCLUSION

For the reasons above, Defendants' motion to dismiss is granted.  An appropriate Order accompanies this Opinion.


/s/ JOEL A. PISANO
United States District Judge


Dated: April 15, 2009